IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROY CHIN, §
 §
      Plaintiff, §
 § Civil Action No. 3:15-CV-1235-D
VS. §
 §
CRETE CARRIER CORPORATION, §
 §
      Defendant. §

MEMORANDUM OPINION
AND ORDER

Plaintiff Roy Chin ("Chin") brought this suit against his former employer, defendant Crete Carrier Corporation ("Crete"), alleging claims for defamation, tortious interference with past and future business relations, and discrimination, retaliation, harassment and hostile environment based on sex/gender. In a prior memorandum opinion and order, *Chin v. Crete Carrier Corp.*, 2016 WL 6565851 (N.D. Tex. Nov. 3, 2016) (Fitzwater, J.) ("*Chin I*"), the court granted Crete's motion for summary judgment except as to the harassment and hostile environment component of Chin's claim for discrimination, retaliation, harassment and hostile environment based on sex/gender. *Id.* at *5. The court denied Crete's motion in this respect because Crete sought summary judgment based on the affirmative defense established by the Supreme Court's decisions in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998), and it failed to demonstrate beyond peradventure that Chin had unreasonably failed to take advantage of any preventive or corrective opportunities provided by Crete or to avoid harm otherwise. *Chin*

*I*, 2016 WL 6565851, at *5. Crete then sought and obtained leave to file a second motion for summary judgment, and it now maintains that Chin has failed to produce sufficient evidence for a reasonable jury to find that Chin was subjected to sexual harassment in the form of a hostile work environment. Because the court agrees that a reasonable jury could not find in Chin's favor on the harassment and hostile environment component of his claim for discrimination, retaliation, harassment and hostile environment based on sex/gender, it grants Crete's motion and dismisses this case with prejudice.

I

Crete hired Chin as a truck driver at the end of April 2014.[1] Chin began field training with David Theis ("Theis"), whom Crete employed as a driver-trainer. Chin's training required that he ride with Theis in the same truck cab and stay at the same motels. For purposes of the instant summary judgment motion, Crete concedes that Theis was a supervisor.[2]

Chin's training with Theis occurred from May 2 through May 7, 2014. Chin alleges that Theis acted inappropriately throughout the training, including by exposing himself while urinating into empty jugs in the truck cab, and making sexual propositions to Chin. After a

---

[1]In deciding Crete's summary judgment motion, the court views the evidence in the light most favorable to Chin as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]*See* D. Br. 4 n.18 ("Crete disputes that Mr. Theis was Chin's supervisor; however, Crete will accept, for purposes of this Motion only, that Mr. Theis was Chin's supervisor.").

few days during which Chin rebuffed Theis's advances, Theis complained to Crete that he no longer wanted Chin in his truck, and he kicked Chin out of the truck. Theis resigned from Crete before the company took any action against him. Soon thereafter, Chin completed his training and began driving full-time for Crete.

II

Crete is moving for summary judgment on a claim for which Chin will have the burden of proof at trial. To be entitled to summary judgment, Crete need only point the court to the absence of evidence of any essential element of Chin's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once Crete does so, Chin must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for Chin. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Chin's failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if Chin fails to meet this burden. *Little*, 37 F.3d at 1076.

III

Crete moves for summary judgment as to Chin's sexual harassment hostile work environment claim, i.e., the harassment and hostile environment component of Chin's claim for discrimination, retaliation, harassment and hostile environment based on sex/gender.

A

Chin complains of the conduct of Theis, his supervisor. To establish a claim for a sexually hostile work environment because of harassment by a supervisor, Chin must prove the following:

> (1) [he] belongs to a protected group; (2) [he] was subject to unwelcome sexual harassment; (3) [t]he harassment complained of was based upon sex; [and] (4) [t]he harassment complained of affected a "term, condition or privilege of employment," i.e., the sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment[.]

*Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999) (on rehearing) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986)).

Crete contends that Chin cannot recover on this claim because he cannot show that the alleged harassment was based on sex, and/or that the actions on which he bases his hostile work environment claim were so severe or pervasive as to affect the terms, conditions or privileges of his employment. Because the court concludes that a reasonable jury could not find in Chin's favor as to the fourth element, it will assume without deciding that a reasonable jury could find that Chin has proved the third element: that Theis's conduct toward Chin was based on sex.

Regarding the fourth element,

> [h]arassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Workplace conduct is not measured in isolation. In order to deem a work environment sufficiently

> hostile, all of the circumstances must be taken into consideration. This includes the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. To be actionable, the work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations and internal quotation marks omitted). "A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

> The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing . . . and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998). Merely offensive conduct is not actionable. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The legal standard for workplace harassment is "high." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003). "[T]he Supreme Court has warned that these high standards are intentionally demanding to ensure that Title VII does not become a general civility code, and

when properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language." *Howard v. United Parcel Serv., Inc.*, 447 Fed. Appx. 626, 632 (5th Cir. 2011) (per curiam) (citations and internal quotation marks omitted) (quoting *Faragher*, 524 U.S. at 788).

B

Viewed favorably to Chin, the summary judgment evidence would permit a reasonable jury to find the following facts. Chin began working under Theis's supervision on May 2, 2014, and the conduct of which he complains occurred on four days during a five-day period of May 3 through May 7, 2014. Chin and Theis occupied the same truck cab, with Theis acting as driver-trainer and Chin as driver-trainee.

On May 3,[3] Theis took photos of Chin without his permission and posted them on

---

[3]In deciding this motion, the court accepts as true the specific dates that Chin cites in his response brief. *See* P. Br. 4-5. In Chin's deposition testimony, however, he made clear that he did not necessarily recall the precise date within the five-day training period when a particular incident occurred.

> Q. And do you specifically remember that this occurred on May 3, 2014, as alleged in your complaint?
> A. Roughly, yes, as far as —
> Q. What is —
> A. — I can recollect
> Q. What is it about May 3, 2014, that you — that makes you remember that that was the date on which these things supposedly happened?
> A. I don't — I don't know for sure. It may be off a day or two.

D. App. 318 (bold font omitted).

Facebook; he admitted he was on heavy anti-depressants; and he exposed his private parts and urinated into empty jugs from the passenger seat while Chin was driving. Theis continued to do this for the duration of Chin's time on the truck, and Theis also sat in the passenger seat wearing only his briefs while he monitored Chin's driving.

On May 4, Theis allowed Chin to use his computer tablet. When Chin finished, he noticed an open window containing images of what appeared to be child pornography. When Chin asked about it, Theis changed the subject, locked the tablet away, and Chin never saw it again.

On May 5, Theis told Chin that he really liked him, and then admitted that he also took anti-psychotic medication. Later in the day, Theis insisted that Chin talk to Theis's mother to say hello. Later that night, Theis admitted that he is bisexual, and he made unspecified homosexual advances toward Chin,[4] which Chin immediately rebuffed by making very clear that he is and always will be a very heterosexual married man.

On May 7, Theis offered Chin a threesome and had his girlfriend surprise Chin and Theis at a truck stop for breakfast. Theis called Crete and told them that Chin was not going to work out and he wanted him off his truck. After Chin briefly informed a Crete representative about some of what had transpired, and the representative apparently told Theis to drop Chin off at specific motel, Theis kicked Chin off his truck down the street from

---

[4]The cited portions of the record refer to homosexual advances or overtures but do not specify the nature of such advances or overtures. *See* D. Br. 2 n.7 (citing D. App. 318-19) (deposition of Chin).

the motel, and threw Chin's luggage out. Theis then bragged and said he would be given another student if he chose to come back, that Chin would be given an accelerated trainer, and that Chin's life at Crete would be very hard from that point on. Chin was then forced to walk with his luggage the remainder of the way down a busy street while Theis videotaped it on his cell phone and laughed.

Although a reasonable jury could find that this conduct occurred, it could not find from the totality of the circumstances that Theis's statements and actions affected a "term, condition or privilege of employment," that is, that the sexual harassment was sufficiently severe or pervasive so as to alter the conditions of Chin's employment and create an abusive working environment. The conduct largely occurred sporadically on four days over a five-day period. Even the most serious conduct—Theis's exposing his private parts while urinating into a jug within the confines of a truck cab, making unspecified homosexual advances, and offering to participate in a sexual threesome with Chin and Theis's girlfriend—did not involve actual physical contact with Chin. One male's urinating and wearing briefs in the presence of another male is conduct that shares similarities with conduct that males observe when using public restrooms. When Theis stated that he is bisexual and made homosexual advances, Chin immediately rebuffed them, and there is no evidence that Theis persisted.[5] The suggested threesome never occurred. Chin's exposure to what he

---

[5]     Q.     Day 3, this David Theis person tells you that he really likes you. Then he tells you that he took antipsychotic medication; is that right?
            A.     Yeah.

thought was child pornography was apparently not intentional and was not repeated.[6] The remainder of the alleged conduct—even considered in its totality with all the conduct in question—cannot support a finding that Chin was subjected to a sexually hostile work environment.

Essentially, a reasonable jury would be only able to find that Theis (a bisexual) was attracted to Chin; that Theis sought to interest Chin in engaging in homosexual conduct with Theis and/or bisexual conduct with Theis and his girlfriend; and that after a few days during which Theis sporadically and unsuccessfully sought Chin's affections, Theis gave up and arranged through Crete to have Chin removed from his truck. A reasonable jury could not find that Chin was subjected to sexual harassment in the form of a hostile work environment.

Accordingly, the court grants Crete's motion for summary judgment dismissing the harassment and hostile environment component of Chin's claim for discrimination,

---

> Q. And later in that same day, he insisted that you talk to his mother and say hello. Then later that night, he admits to you that he's bisexual, then made homosexual advances towards you; is that right?
> A. Yes.
> Q. And you made it clear that you are and will always be very heterosexual?
> A. Yes.
> Q. Did you tell him "thank you, but no thank you"?
> A. Yes.

D. App. 319 (bold font omitted).

[6]*See id.* at 318 (Chin deposition) ("I never saw it again.").

- 9 -

retaliation, harassment and hostile environment based on sex/gender.

* * *

For the foregoing reasons, the court grants Crete's second motion for summary judgment, dismisses Chin's remaining claim, and enters judgment dismissing this action with prejudice.

**SO ORDERED**.

August 10, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE